IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES R. BOLDUC et al.          :
                                :
v.                              :    Civil No. WMN-07-1855
                                :
OMEGA CLAIMS SOLUTIONS, INC.    :
et al.                          :

## MEMORANDUM

Before the Court is Plaintiffs' motion to remand this action to the state court. Paper No. 5. Defendants' motion to dismiss for lack of personal jurisdiction, Paper No. 6, is also pending. Upon review of the pleadings and the relevant case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion to remand should be denied. The Court also concludes, however, that this action must be dismissed for lack of personal jurisdiction over Defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of the sending of a letter on December 22, 2006, by the Defendants' attorney, Scott Rothenberg, at the behest of Defendants. Plaintiffs allege that the letter contained false and defamatory statements about Plantiff James Bolduc and his company, Plaintiff JPB Enterprises, Inc. (JPBE). The events leading up to the sending of this letter are as follows.

Corporate Defendants, Universal Risk Insurance Services, Inc. and Omega Claims Solutions, Inc. are Texas corporations with their principal places of business in Texas. Individual Defendants Joe LeBrun, Clayton Hartley and Wiley Lebrun are alleged to have acted as the express agents of and for the

Corporate Defendants and serve as officers and/or directors for those corporations. In November of 2006, the Corporate Defendants purchased certain assets of N'Site Solutions, Inc., an Iowa Corporation (N'Site). Plaintiff Bolduc is an officer and director of N'Site and was involved in the negotiations and discussions leading up to the asset sale. Defendants claim that after the sale was consummated they discovered that numerous misrepresentations about the assets had been made during the course of negotiations and Defendants had counsel send the December 22, 2006, letter to declare their intention to rescind the sale. The letter also identified Mr. Bolduc as the source of many of the false statements and indicated that the Defendants refused to have any further dealings with Mr. Bolduc.

Alleging that this letter damaged their reputation in the community and in Bolduc's industry, Plaintiffs filed this action in the Circuit Court for Howard County, asserting claims of "Libel/Defamation/False Light," "Tortious Interference with Contract/Prospective Advantage," and "Civil Conspiracy." Defendants were served with the summons and complaint on May 14, 2007, via certified mail.

Defendants filed a Notice of Removal on July 13, 2007, 60 days after service of process, asserting that the action was removable on the basis of diversity jurisdiction pursuant to 28 U.S.C § 1332. Without disputing that there is diversity jurisdiction over their claims, Plaintiffs contend that Defendants' removal was untimely. In the motion to dismiss,

2

Defendants argue that they have insufficient contacts with Maryland upon which personal jurisdiction over them could be based.

## II. MOTION TO REMAND

Under the federal removal statute, removal must generally occur within thirty days of receipt, by service or otherwise, "of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). The second paragraph of § 1446(b), however, provides that "[i]f the case stated in the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis [of diversity jurisdiction] more than 1 year after commencement of the action." Id.

Defendants contend that the "case stated in the initial pleading" was not removable because it did not identify the citizenship of either Plaintiff. They argue further that it was not until internet research established the citizenship of Plaintiffs that Defendants first ascertained that the case was removable based upon federal diversity jurisdiction. This research was conducted by Defendants' corporate counsel from July 2, 2007, through July 8, 2007. Defendants removed the action just five days after the completion of that research. As support

3

for their assertion that removal of this action was timely, Defendants turn to the Fourth Circuit's decision in <u>Lovern v. General Motors Corp.</u>, 121 F.3d 160 (4th Cir. 1997).

<u>Lovern</u> arose out of injuries sustained in an automobile accident that occurred in Virginia.  The plaintiff brought suit in a Virginia state court against the manufacturer of the vehicle, but the initial pleading did not reveal the plaintiff's address or citizenship.  About 75 days after the defendant was served with the initial pleading, it obtained a police report on the accident that disclosed the plaintiff's Virginia residence, and twenty days after that, received answers to interrogatories from the plaintiff in which the plaintiff stated that he was a citizen of Virginia.  The Defendant removed the action to federal court eight days after receipt of the answers to interrogatories.

The plaintiff moved to remand the action to state court, arguing that the "case stated by the initial pleading" was removable from the time it was first filed based on the "<u>actual</u> status of the parties' citizenship at the time of service," 121 F.3d at 162 (emphasis in original), even if that actual status was not revealed in the complaint.  In his view, the second paragraph of § 1446(b) applies only to situations in which the parties' citizenship was misstated or some post-complaint change renders the action newly removable.  In rejecting that argument, the Fourth Circuit held that,

> only where an initial pleading reveals a
> ground for removal will the defendant be
> bound to file a notice of removal within 30
> days.  Where, however, such details are

4

>       obscured or omitted, or indeed misstated,
>       that circumstance makes the case "<u>stated</u> by
>       the initial pleading" not removable, and the
>       defendant will have 30 days from the
>       revelation of grounds for removal in an
>       amended pleading, motion, order, or other
>       paper to file its notice of removal, provided
>       that, in diversity cases, no more than a year
>       shall have passed from the date of the
>       initial pleading.

<u>Id.</u> (emphasis in original).

In this action, the Complaint states that Plaintiff James Bolduc is a "resident" of Maryland and the caption provides a Howard County, Maryland address for Mr. Bolduc.  The Complaint also includes the allegation that Plaintiffs "invested thousands of dollars and hundreds of hours of time, in local Howard County charities . . . ."  Compl. ¶ 6.  While acknowledging, as they must, that residency is not the same as citizenship,[1] Plaintiffs argue that "there was plenty of information included [in the

---

[1] See <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 856 (9th Cir. 2005), explaining,

>       the diversity jurisdiction statute, 28 U.S.C.
>       § 1332, speaks of citizenship, not of
>       residency.  To be a citizen of a state, a
>       natural person must first be a citizen of the
>       United States.  The natural person's state
>       citizenship is then determined by her state
>       of domicile, not her state of residence.  A
>       person's domicile is her permanent home,
>       where she resides with the intention to
>       remain or to which she intends to return.  A
>       person residing in a given state is not
>       necessarily domiciled there, and thus is not
>       necessarily a citizen of that state.

(citations omitted).

Complaint] to put the Defendants on notice as to the diversity of citizenship."  Mot. at 5.[2]  Plaintiffs also argue that the parties' prior dealings "make clear that the Defendants have always had actual knowledge of Mr. Bolduc's citizenship."  Mot. at 4 n.1.

These arguments are precisely the arguments anticipated and rejected in Lovern.  The court held that "we will allow [courts] to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, <u>requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper</u>."  121 F.3d at 162 (emphasis added).  Furthermore, the court held that "we will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who

---

[2] As the Complaint fails to specify the citizenship of Defendants, it is also ambiguous as to their citizenship.  It identifies the two corporate defendants as "Texas corporations," two of the individual defendants as "residents" of Texas, and one of the individual defendants as a "resident" of Georgia .  Compl. at introductory unnumbered paragraph. Defendants, of course, can be charged with knowledge of their own citizenship. See Praisler v. Ryder Integrated Logistics, Inc., 417 F. Supp. 2d 917, 920 (N.D. Ohio 2006) ("Unlike a plaintiff's damage claim, cause of action, or citizenship, a defendant's citizenship does not even bring the defendant's subjective knowledge into play, since an individual or a corporate defendant can be expected to know its own citizenship."). Defendants specify in the Notice of Removal that four of the defendants are citizens of Texas, and one of Georgia.

6


knew what and when."  Id.

Plaintiffs' efforts to distinguish this case from Lovern are unavailing.  Specifically, they note that in Lovern the complaint at issue "did not reveal plaintiff's address or citizenship."  Id. at 161.  Plaintiffs assert that "[t]he Court of Appeals inferred, and the underlying trial court found, that had the Complaint provided the residence for Mr. Lovern the result may have been different."  Mot. at 3 (emphasis in original).  While the district court does appear to have held that the defendant's receipt of the police report containing the plaintiff's address triggered the running of the 30 day time period, the Fourth Circuit in its opinion expressly noted that it "need not determine whether the police report alone would have triggered the running of the 30-day clock in order to affirm the district court's determination that the notice of removal was timely filed."  121 F.3d at 163.  There is no indication that the residence/citizenship distinction was even raised in the district court and this Court finds no inference, either way, in the Fourth Circuit's avoidance of the issue.  In the face of the extensive weight of authority in this and other circuits that residence alone does not determine citizenship, this Court cannot conclude that the removability of this action was apparent based upon the facts alleged in the Complaint.  See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 145 F.3d 660, 663 (4th Cir. 1998) (concluding that where the pleadings only set forth the residence of each of the natural persons who were parties to the

litigation, the plaintiff had "failed to plead facts from which the existence of [diversity] jurisdiction could be inferred."); see also 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3611 at 512 n.13 (collecting cases).

Contrary to this vast weight of authority, Plaintiffs attempt to invoke the language of the Fourteenth Amendment to the United States Constitution to argue that "residence is a determiner of citizenship." Mot. at 5. The Fourth Amendment does state that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." U. S. Const. amend XIV. Courts have long recognized, however, that the rule that "mere residence in a state does not make a person a citizen of that state . . . was sufficiently established by the middle of the nineteenth century to survive the implications of the pronouncement in the Fourteenth Amendment." Wright, Miller & Cooper, supra § 3611 at 513. See also Robertson v. Cease, 97 U.S. 646 (1878) (holding that there is nothing in the language of the Fourteenth Amendment that renders the bare averment of residence of the parties sufficient to make out a prima facie case of jurisdiction).

Were the Court to find that the Complaint was sufficient to put Defendants on notice that Mr. Bolduc was a Maryland citizen, it still would not conclude that service of the Complaint triggered the time period for removal. Defendants may remove an action on the basis of diversity jurisdiction only if "there is

8

complete diversity between all named plaintiffs and all named defendants."  Lincoln Property Co. v. Roche, 546 U.S. 81, 84 (2005) (emphasis added).  As to Plaintiff JPBE, the Complaint simply states that JPBE is "a Florida Corporation."  Compl. at unnumbered introductory paragraph.  For diversity jurisdiction purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated <u>and</u> of the State where it has its principle place of business."  28 U.S.C. § 1332(b)(1) (emphasis added).  Because the Complaint does not state where JPBE's principle place of business is located, it could not be ruled out that JPBE might also be a citizen of Georgia or Texas.  Thus, Defendants could not ascertain from the Complaint alone if the case was removable.  See Hawes v. Cart Products, Inc., 386 F. Supp. 2d 681, 685 (D.S.C. 2005) (relying on Lovern and holding that, where there was no indication as to the states of incorporation or the location of the principal places of business of the defendants, as pled within the four corners of the complaint, the case was not initially removable by any defendant); City of Albion v. Guar. Nat. Ins. Co., 35 F. Supp. 2d. 542, 547 (W. D. Mich. 1998) (citing Lovern and holding that a complaint naming several unrelated defendants "did not inform Defendants that diversity existed because [the plaintiff] did not allege each Defendants' principal place of business").

 Finally, the Court must briefly address Plaintiffs' assertion that Defendants' "investigation" was a "sham," Mot. at 4 n.1, and a "subterfuge to cover up a missed removal deadline."

Id. at 3.  Plaintiff also questions why Defendants waited 49 days to conduct its "internet investigation."  In Lovern, the Fourth Circuit did caution that "the extension of the removal period in the case where the initial pleading does not state the factual or legal bases for removal should not be allowed to cover strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position."  121 F.3d at 163.  The court went on to conclude, however, that § 1446(b)'s one year absolute bar in diversity cases was "a sufficient incentive for defendants promptly to investigate the factual requisites for diversity jurisdiction, including the citizenship of the plaintiff and the amount in controversy."  Id.  In light of the Fourth Circuit's pronouncement that the one year limitation is a sufficient incentive for diligence, this Court cannot fault Defendants here taking 49 days to establish facts that Plaintiff could easily have included in the Complaint.

For these reasons, the motion to remand must be denied.

### III. MOTION TO DISMISS

Generally, when a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for jurisdiction. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).  If, however, as in this case, the court does not hold an evidentiary hearing, the plaintiff is only required to make a prima facie showing of personal jurisdiction.

10

Id.; Estate of Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514, 516 (D. Md. 2003). In deciding the motion, the court must resolve all factual disputes and make reasonable inferences in favor of the plaintiff. See Carefirst, 334 F.3d at 396.

Typically, the court must perform a two-step inquiry to determine whether it may exercise personal jurisdiction over a defendant. First, the court must determine if jurisdiction is authorized under the long-arm statute of the forum state. See id., 334 F.3d at 396; Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Second, the court must decide whether personal jurisdiction comports with Fourteenth Amendment due process requirements. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the Fourteenth Amendment due process clause, and the statutory and constitutional inquiries therefore merge in this case. See Carefirst, 334 F.3d at 396-97 (citing Mohamed v. Michael, 370 A.2d 551, 553 (Md. 1977)). The requirements of due process are established if it can be shown that the defendant has purposefully directed its activities towards the resident of the forum state, or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denkla, 357 U.S. 235, 253 (1958). For this Court to exercise personal jurisdiction over Defendants, due process requires that

11

they have at least "minimum contacts" with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court may assert either "specific" or "general" personal jurisdiction over a non-resident defendant.  Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 and n.8 (1984). If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state.  To establish general jurisdiction, the defendant's contact with the forum state must be "continuous and systematic."  Id. at 414-15 and n. 9 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952)). Plaintiffs appear to assert that this Court could assert both specific and general jurisdiction over Defendants.

To determine whether the exercise of specific jurisdiction comports with due process, the court must consider: (1) the extent to which the defendants purposefully availed themselves of the privilege of conducting activities in Maryland; 2) whether the plaintiffs' claims arise out of the defendants' Maryland-related activities; and 3) whether the exercise of personal jurisdiction would be constitutionally reasonable.  See Carefirst, 334 F.3d at 397; Johansson Corp. v. Bowness Constr.

Co., 304 F. Supp. 2d 701, 704 (D. Md. 2004). Specific jurisdiction comports with due process if the defendants could have "reasonably anticipate[d] being haled into court" in Maryland, the forum state. World-Wide Volkswagen Corp., 444 U.S. at 297.

Because the second prong of the test for specific jurisdiction requires the Court to determine whether Plaintiffs' claims arise out of Defendants' Maryland-related conduct, the Court must look carefully at the precise scope of Plaintiffs' claims.  As explained above, all of Plaintiffs' claims arise out of the sending of the December 22, 2006, letter.  This letter was sent via facsimile by a Texas attorney, from Texas, to N'Site's office in Minnesota, and to an attorney in Seattle, Washington. The purpose of the letter was to rescind the sale of assets from an Iowa Corporation to a Texas Corporation.

Plaintiffs argue that this dispute arises out of Maryland-related conduct because some of the meetings negotiating the asset sale took place in Maryland and some telephone calls made as part of the negotiations went to or from Maryland.  Were this a contract action to either rescind the sales agreement, enforce the sales agreement, or for damages related to that contract, the Court might agree that there is specific jurisdiction.  This action, however, is a defamation action where Plaintiffs allege they were injured, not by anything that occurred in the Maryland negotiations, but by a letter sent from the State of Texas to the

13

States of Minnesota and Washington.[3]

Plaintiffs also argue that the sending of this letter was "Maryland related conduct" because the tortious injury was suffered in Maryland. Opp. at 3. While the Fourth Circuit has recognized that "the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry," it also noted that the place of injury "must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction is to be upheld." Young v. New Haven Advocate, 315 F.3d 256, 262 (4th Cir. 2002). In this analysis, the Fourth Circuit has "emphasized how important it is . . . to look at whether the defendant has expressly aimed its conduct toward the forum state." Id.  Here, the Defendants' conduct relevant to this action was not directed to any Maryland audience.

Thus, the Court finds that the conduct forming the basis of the Complaint is not sufficiently connected to Maryland to enable this Court to exercise specific personal jurisdiction over Defendants.

Plaintiffs' assertion of general jurisdiction over Defendants is still more attenuated. "Typically, courts assert general jurisdiction only over nonresidents who are essentially domiciled within the forum state." Corry v. CFM Majestic Inc.,

---

[3] As a clear indication that this action is not about the contract that was negotiated, at least in part, in Maryland, the Court notes that actual seller of the assets, N'Site, is not a party in this action.

14

16 F. Supp. 2d 660, 663 (E.D. Va. 1998) (noting that the minimum benchmark is typically an office in the forum state).  The Fourth Circuit cautions that "broad constructions of general jurisdiction should be generally disfavored."  Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993).

Here, Defendant Wiley LeBrun, Jr. has submitted an affidavit stating that, during the relevant time period, he has not maintained any office, post office box or telephone listing in Maryland; has not owned any real estate or property in Maryland; has not paid any taxes in Maryland; has had no bank accounts in Maryland; has done no business and has not been qualified or licensed to do business in Maryland; and has never availed himself of the benefits or protections of the laws of Maryland. Wiley LeBrun, Jr. Aff. at ¶ 2-10.  He also states in his affidavit that the Corporate Defendants have never been incorporated in Maryland, never have been qualified to do business in Maryland, have no officers, directors, or employees who are or have been domiciled in Maryland, and own no property in Maryland.  Id. at ¶ 13-22.

The contacts of the remaining two Defendants with Maryland are limited to the following.  Defendant Clayton Hartley states that on two occasions he participated in a meeting in Maryland regarding the contract for the N'Site asset sale.  Hartley Aff. at ¶ 2.  Defendant Wiley "Joe" LeBrun, III, states that he participated in one meeting in Maryland regarding the N'Site asset sale.  Joe LeBrun Aff. ¶ 2.  In addition, Joe LeBrun

15

participated in approximately eight telephone calls with Bolduc while Bolduc was in Maryland.  Joe LeBrun states that he initiated approximately one half of those calls.  Id.

If these contacts were more directly related to Plaintiffs' claims, they might be sufficient to establish specific personal jurisdiction over Defendants.  They fall far short, however, of constituting the "continuous and systematic" contact with Maryland necessary to establish general jurisdiction over these Defendants.[4]

Finally, Plaintiffs opine that they "believe that Defendants derive and solicit business in Maryland sufficient to establish substantial contacts therewith" and request time to conduct discovery on this issue.  It is within the court's discretion to deny jurisdictional discovery when a plaintiff offers "only speculation or conclusory assertions about contacts with a forum state," Carefirst, 334 F.3d at 402-03.  The Court finds that Plaintiffs here have offered nothing more than speculation.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' motion to remand, and will grant Defendants' motion to dismiss.  A separate order will issue.

---

[4] Plaintiffs rely on the "conspiracy theory" of personal jurisdiction discussed by this Court in Compass Marketing, Inc. v. Schering-Plough Corp., 438 F. Supp. 2d 592 (D. Md. 2006), to attribute Clayton Hartley's and Joe LeBrun's contacts with the State of Maryland to the three Defendants they acknowledge were not physically in the state.  Opp. at 3.  Just as these contacts are insufficient to create general jurisdiction over Hartley and Joe LeBrun, they are insufficient to cast it over the remaining three defendants.

```
                           _____/s/_____
                           William M. Nickerson
                           Senior United States District Judge
```

DATED: October 16, 2007